UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| STEPHANIE ARMOUR,<br><br>                Plaintiff,<br><br>        v.<br><br>DOW JONES & COMPANY, INC.<br><br>                Defendant. | Civil Action No. 24-2309 (BAH)<br><br>The Hon. Judge Beryl A. Howell |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR JOINDER OF DAMIAN PALETTA AND JANET ADAMY UNDER FRCP 20 AND REMAND**

**INTRODUCTION**

Plaintiff, Ms. Stephanie Armour ("Armour"), moves this Court for permissive joinder under FRCP 20 of two defendants, Mr. Damian Paletta ("Paletta") and Ms. Janet Adamy ("Adamy"). Paletta and Adamy supervised Plaintiff while she was employed by the Wall Street Journal ("WSJ") (which is owned in whole by Defendant Dow Jones & Company, Inc., "Dow Jones"). Paletta and Adamy carried out the acts of employment discrimination, retaliation and fraud, which were set out in detail in Plaintiff's initial Complaint, and are also set out in Attachment A, Plaintiff's proposed Amended Complaint. Plaintiff now seeks relief as to Paletta and Adamy, along with the Defendant. Joinder is appropriate here.

1

Defendant removed this case to Federal Court solely on the basis of diversity jurisdiction. Adamy is a resident of the District of Columbia. Should this Court grant joinder of Adamy, the case must be remanded to the DC Superior Court.

## FACTUAL BACKGROUND

1. For over a decade, Plaintiff worked at the WSJ. Throughout her time at the WSJ, Ms. Armour was accorded a series of formal and informal disability accommodations under both the Americans with Disabilities Act and the DC Human Rights Act. Working with these reasonable accommodations, Ms. Armour excelled, produced outstanding, high-impact stories, on topics such as COVID-19, Medicare, the Affordable Care Act, and hospital accreditations.

2. In 2024, after a change in leadership at the WSJ, Paletta was named the Washington Coverage Chief (bureau chief) and Adamy was named the Washington Deputy Coverage Chief,

Paletta's deputy. Paletta and Adamy took over the day-to-day supervision of Armour. 3. Immediately, Paletta and Adamy expressed hostility to Plaintiff's disability accommodations. When Armour raised these concerns with Paletta and Adamy, they began a series of unlawful and retaliatory actions that discriminated against her in her employment. Given Paletta's and Adamy's hostility to her accommodations, Armour sought to formalize all these accommodations. Within days of being granted such formal accommodations by the WSJ, Paletta made a series of false, fraudulent and defamatory claims regarding her job performance. He used these false, fraudulent and defamatory claims as grounds to commence a Performance Improvement Process ("PIP"), the process by which the WSJ terminates employees for cause. Paletta then used the performance review process to impose new, unreasonable and discriminatory benchmarks on Ms. Armour, with the obvious intent of using her failure to meet

these benchmarks as trumped-up grounds to terminate her from the WSJ. Ms. Armour is the primary breadwinner for herself and two daughters, one of which has special needs; she could not afford to be fired and not be able to support herself and her family. Despite her oftendeclared intention to remain at the WSJ for the remainder of her career, she was forced to seek and take new employment. Defendants' actions constituted constructive discharge.

4. Defendant's actions—as implemented by Paletta and Adamy—violated the District of Columbia Human Rights Act (DCHRA), D.C. Code §§ 2-1402.11 et seq. ("DCHRA").

5. As a result of the actions of Defendant, Paletta and Adamy, Plaintiff has suffered a series of damages.

6. Armour bought this case in DC Superior Court seeking appropriate relief from such damages. On July 17th, Plaintiff served Defendant with the Complaint.

7. On August 7, 2024, Defendant removed this case from DC Superior Court to this Court on the sole basis of diversity jurisdiction. *See* Defendant's Notice of Removal, Aug. 7, 2024, at para. 6-16.

8. Attachment A is Plaintiff's proposed Amended Complaint (which includes the to-bejoined Defendants Adamy and Paletta). Defendant has not yet served an answer to Plaintiff's complaint.

9. As set out in more detail in the proposed Amended Complaint, Adamy was a key participant in the discriminatory, retaliatory, and fraudulent conduct that Plaintiff suffered. For example, Adamy refused Plaintiff's requests for reasonable accommodations over the course of years. Once Adamy became one of Plaintiff's direct supervisors, Adamy took a series of discriminatory and retaliatory actions against Plaintiff for seeking such accommodations. For example, Adamy played a key role in helping develop the false—fraudulent—narrative upon

which Defendants commenced the Performance Improvement Process. Adamy refused to approve Plaintiff's story ideas and in certain cases gave Plaintiff's ideas away to other reporters. Her actions made it seem Plaintiff was not producing, which was Defendants' intent. Her actions were instrumental to the Defendants' scheme to oust Plaintiff. She was heavily involved in all the series of events that make up the unlawful behavior here. Adamy working in concert with Paletta—and with Defendant's knowledge and approval—carried out the discriminatory, retaliatory, and fraudulent actions against Plaintiff on behalf of the WSJ. Adamy's actions violated the DCHRA and constituted civil fraud. Plaintiff now seeks remedies against Adamy, as set out in the proposed Amended Complaint.

10.     Adamy works in the WSJ's office in Washington, DC. Adamy resides in the District of Columbia, at 4530 Brandywine Street, NW, Washington, DC 20016. (Plaintiff also works and resides in the District of Columbia.) Adamy is nondiverse.

11.     As set out in the proposed Amended Complaint, Paletta was a key participant in the discriminatory, retaliatory, and fraudulent conduct that Defendant suffered. Paletta, as DC Bureau Chief, was Armour's primary supervisor at the WSJ. (with support from Adamy). Paletta working in concert with Adamy—and with Defendant's knowledge and approval—carried out the discriminatory, retaliatory, and fraudulent actions against Plaintiff on behalf of the WSJ. He was the primary author of and issued the PIP, including the fraudulent claims. He refused and disparaged Plaintiff's request for reasonable accommodations. He took retaliatory actions against Plaintiff, such as: mandating Plaintiff be present in the office, when no other staff had such enforced requirements; mandating Plaintiff must produce "scoops", when no other reporter has such a requirement; and refusing to approve her story ideas (to ensure her lack of production); then lying about these events in Armour's PIP. Paletta's actions violated the

DCHRA and constituted civil fraud.  Plaintiff now seeks remedies against Paletta, as set out in the proposed Amended Complaint.

12.	Paletta works at the WSJ's office in Washington, DC.  Paletta is a resident of Virginia, residing at 5900 Ashby Manor Place, Alexandria VA 22310.

## ARGUMENT

13.	"Rule 20(a)(2) allows the joinder of multiple defendants if: (1) 'any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences'; and (2) 'any question of law or fact common to all defendants will arise in the action.'" *Blount v. U.S. Sec. Assocs.*, 930 F. Supp. 2d 191, 193 (D.D.C. 2013)(*citing* FRCP 20(a)(2)); *quoting Disparte v. Corp. Exec. Bd.*, 223 F.R.D. 7, 10 (D.D.C. 2004)).

14.	As the Court in *Disparte* explained:

> In order to satisfy the first prong of this equation, the claims must be logically related. *Moore v. New York Cotton Exchange*, 270 U.S. 593, 610, 46 S.Ct. 367, 70 L.Ed. 750 (1926). The logical relationship test is flexible because " the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

*Disparte*, supra, at 10.

11.	Here, Plaintiff sues the Defendants severally, for damages arising from the very "same series of transactions or occurrences." *Blount supra*, at 193.  Plaintiff's claims all arise from the conditions of her employment with the WSJ during the period of time when Adamy and Paletta supervised her.  All Plaintiff's claims arise as a result of the actions of all three Defendants to deny her reasonable accommodations; retaliate against her for seeking such accommodations; and create a fraudulent employment record to

5

justify her constructive termination. The to-be-joined Defendants were, in fact, the agents and instrumentalities of the original Defendant in these very actions. *See Birdo v. Gomez*, 214 F. Supp. 3d 709 (N.D. Ill. 2016) ("Courts consider 'a variety of factors, including whether the alleged conduct occurred during the same general time period, involved the same people and similar conduct, and implicated a system of decisionmaking or widely-held policy. [Adkins v. Illinois Bell Tel. Co. , No. 14–CV–1456, 2015 WL 1508496, at *7 (N.D. Ill. Mar. 24, 2015).'].""). Plaintiff's claims are logically related under the standard set out in *Moore v. New York Cotton Exchange*, 270 U.S. 593, 610, 46 S.Ct. 367, 70 L.Ed. 750 (1926).

12. Likewise, in this case virtually all questions of law and fact are common among all Defendants, to include the to-be-joined Defendants. For example, Plaintiff's common claims against all Defendants arise under the DCHRA, and civil fraud. The only unique claim is breach of contract against the Defendant. However, even with respect to this count, the facts that give rise to the claim are the same facts as to the other claims and Defendants. Much like in *Blount*, "Defendants share common questions of law and fact: the two sets of claims are based on identical legal theories and the same core facts." *Blount, supra*, at 194.

13. Joining these Defendants serves the "interest of convenience and judicial economy in a manner that will secure the just, speedy, and inexpensive determination of the action." *Lane v. Tschetter*, No. 05-1414, 2007 WL 2007493, at *7 (D.D.C. July 10, 2007).

14. "When joinder of a nondiverse party would destroy subject matter jurisdiction, 28 U.S.C. § 1447(e) applies and provides the district court two options: (1) deny joinder, or (2) permit joinder and remand the action to state court." *See See Schur v. L.A. Weight Loss*

*Centers, Inc.*, 577 F.3d 752, 759 (7th Cir. 2009) (*citing Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1486 (7th Cir. 1996); *see also* FRCP § 1447(e).

15.     In determining whether to grant post-removal joinder, courts typically look at a series of factors, specifically: "1) the plaintiff's motive for seeking joinder, particularly whether the purpose is to defeat federal jurisdiction; (2) the timeliness of the request to amend; (3) whether the plaintiff will be significantly injured if joinder is not allowed; and (4) any other relevant equitable considerations." *Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752, 759 (7th Cir. 2009) (citations omitted).

16.     In this instance, all such factors support granting joinder.  Plaintiff's motive for seeking joinder is to seek justice as to and relief from all responsible parties in the manner that most promotes judicial economy and reduces the cost and burdens on all parties from multiple cases arising from the same facts and law.  Plaintiff's motion for joinder is made in a timely manner—before initial Defendant's response has been filed.  *See* 28 U.S. Code § 1447 (30-days post filing).  If the Court does not order joinder, Plaintiff will be significantly injured by having to pursue multiple cases, with duplicative discovery and practice, at exponentially higher costs and burdens, to seek the same justice.  Plaintiff is the primary breadwinner for herself and her two children, one of which has special needs, and both are in college paying tuitions.  The fiscal burdens of duplicative litigation would create a serious hardship on Plaintiff.

17.     There is no prejudice to any Defendant from granting joinder.  Adamy and Paletta acted in concert and undertook the specific actions alleged here and with greater detail in the proposed Amended Complaint.  In so doing Adamy and Paletta were employed by Defendant WSJ and were acting as the WSJ's agents in taking these actions.  Plaintiff

alleges, upon information and belief, that Adamy and Paletta's actions here were done as part of a wider WSJ effort to terminate high-paid, high-health-cost employees on trumped up, false performance allegations. Defendant WSJ has stood behind the actions of Adamy and Paletta here. Given these facts, compelling all three of Defendants to answer for these common actions in one litigation does not prejudice any one of them in any way.

## CONCLUSION

For the foregoing reasons, Plaintiff requests that the Court grant Plaintiff's Motion for Joinder and Remand and join Damian Paletta and Janet Adamy and remand this case to the DC Superior Court.

Dated: August 14, 2024

Respectfully submitted,

By: _____
Robert Housman
471099
Book Hill Partners
9001 Clifford Avenue
Chevy Chase, MD 20815
202-486-5874
Rhousman@bookhillpartners.com
*Attorney for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing was electronically filed via the Court's CM/ECF filing system on this 14th day of August, 2024, with a copy served by electronic mail to counsel for the Defendant, Robert Niccolini, of Ogletree Deakins.

_____ Robert Housman