IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STEPHANIE ARMOUR,<br><br>*Plaintiff*,<br><br>v.<br><br>DOW JONES & COMPANY, INC.,<br><br>*Defendant*. | Civil Action No. 1:24-cv-02309 |

### DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR JOINDER AND REMAND

Defendant Dow Jones & Company, Inc. ("Defendant" or "Dow Jones"), by and through undersigned counsel, does hereby submit this Opposition to Plaintiff's Motion for Joinder and Remand (ECF No. 5).

On August 7, 2024, Defendant removed this matter to this Court based on diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). Plaintiff now seeks to join Janet Adamy as an individual co-defendant in this matter,[1] <u>after</u> Dow Jones already properly removed, solely so that the case might be remanded back to D.C. Superior Court (because Ms. Adamy is a resident of D.C.) Plaintiff's effort to join Ms. Adamy amounts to fraudulent joinder, however, given that Ms. Adamy has not supervised Plaintiff for over a decade, and the conclusory allegations offered by Plaintiff in her proposed Amended Complaint are not sufficient to permit Plaintiff to defeat diversity jurisdiction and seek remand.

---

[1] Plaintiff in fact moves to join both Janet Adamy and Damien Palleta as individual co-defendants. Dow Jones does not oppose the joinder of Mr. Palleta, as he was in fact Plaintiff's direct supervisor during the relevant time period. But as a citizen and resident of Virginia, Mr. Palleta's addition to the case as an individual defendant does not impact the diversity jurisdiction analysis or require remand.

I.     **RELEVANT FACTUAL BACKGROUND**[2]

Defendant Dow Jones is the publisher of *The Wall Street Journal* ("WSJ") and other media properties. *See* Compl. ¶ 9. Sometime in November 2013, Dow Jones hired Plaintiff as a senior reporter at the WSJ in its Washington D.C. office. *See id.* at ¶ 8, 11.

Plaintiff contends that in 2014, former D.C. Bureau Chief Jerry Seib ("Mr. Seib") allegedly told Plaintiff "she could work from home on a regular basis, provided not every day of the workweek." *Id.* at ¶ 18.

After approximately six months in her role, Plaintiff was "granted a transfer from covering banking to covering health care under the supervision of Ms. Adamy." *Id.* at ¶ 19. Ms. Adamy, however, only supervised Plaintiff from May 2014 until Ms. Adamy went out on maternity leave in mid-February 2015, a period of less than ten months. *See* Exhibit 1, Declaration of Janet Adamy (hereinafter "Adamy Decl.") at ¶ 3. Ms. Adamy was not involved with nor had any authority to approve or deny formal disability accommodation requests either during her supervision of Plaintiff or at any time thereafter. *See id. at* ¶ 4.  Ms. Adamy has not supervised Plaintiff for over a decade now, and her interaction with Plaintiff over the last several years has been limited to providing feedback on a few story ideas and, on rare occasions, editing her copy.  *See id. at*  ¶ 5.

On March 6, 2015, Dow Jones granted Plaintiff an ADA accommodation, after receiving Plaintiff's official accommodation request for the first time. *See* Compl. ¶ 26. Plaintiff's formal accommodation gave her the ability to work from home two days a week. *See id.*  This occurred after Ms. Admay had stopped supervising Plaintiff, however.

---

[2] Although well-pleaded facts alleged in Plaintiff's Complaint must be accepted as true for purposes of evaluating a motion to dismiss, nothing in this memorandum should be construed as an admission by Dow Jones of the truth of any allegation contained in the Complaint. Furthermore, because Plaintiff's Motion for Joinder is pending, her proposed Amended Complaint is not yet admitted, and therefore Defendant cites to the facts alleged in the original Complaint in the Relevant Background section, while still identifying the futile nature of any additional allegations in the proposed Amended Complaint throughout this Opposition.

Sometime in November 2020, the WSJ's D.C. newsroom underwent a reorganization, and, as a result, Plaintiff was assigned to report to Ben Pershing. *See id.* at ¶ 30. Sometime in February 2020, the WSJ then went fully remote as a result of the COVID-19 pandemic. *See id.* at ¶ 31.

In March 2022, the WSJ began returning to in-office work. In August 2022, Dow Jones and the NewsGuild local that represents non-management employees in the WSJ newsroom (the Independent Association of Publishers' Employees, "IAPE") agreed to a Flexible Work Policy with the intention that employees were to return to work in-office three days a week. *See id.* at ¶ 33. Plaintiff alleges that she "spoke with WSJ leadership about needing to work at home both for her accommodation and because her son was having medical issues." *Id.* at ¶ 34. She contends that her bureau chief (not Ms. Adamy) allowed her to work from home as often as needed. *See id.* Between August 2022 and February 2024, Plaintiff claims she worked in the office one to two days a week. *See id.* at ¶ 35.

Sometime in February 2024, the WSJ newsroom underwent another restructuring, whereby Damien Paletta ("Mr. Paletta") became the WSJ's D.C. Coverage Chief, and Ms. Adamy was promoted to Deputy Coverage Chief. *See id.* at ¶ 39–40.  Mr. Paletta at this time began to supervise Plaintiff, but Ms. Adamy did not; to the contrary, Ms. Adamy in fact has had no employees reporting to her in 2024. *See* Adamy Decl. ¶ 2.

On March 20, 2024, Plaintiff made a formal request for an additional ADA remote work accommodation, seeking permission to work fully remotely. *See* Compl. ¶ 51.  Shortly thereafter, on April 16, 2024, the request was granted. *See id.* at  ¶ 52.

Due to Plaintiff's poor job performance, on April 24, 2024, Mr. Paletta issued Plaintiff a formal performance warning. *See id.* ¶ 55–56. About two months after she received her

3

performance warning, on June 17, 2024, Plaintiff resigned from her position at the WSJ, and accepted a new job from a different media outlet. *See id.* ¶ 59.

## II. PROCEDURAL BACKGROUND

On July 9, 2024, Plaintiff filed her lawsuit against Defendant Dow Jones in the District of Columbia Superior Court (entitled *Stephanie Armour v. Dow Jones & Company, Inc.*, Case Number 2024-CAB-00426) (the "D.C. Superior Court Action").

On August 7, 2024, Dow Jones timely removed the D.C. Superior Court Action to this Court based upon complete diversity of citizenship between the only two parties in the case at the time: Plaintiff and Dow Jones. Defendant Dow Jones prepared its Answer to the Complaint, but on the eve of filing, counsel for Plaintiff advised counsel for Dow Jones that Plaintiff would be filing an Amended Complaint.

On August 14, 2024, Plaintiff filed a Motion for Joinder and Remand, suddenly seeking to add Ms. Adamy and Mr. Palleta as additional defendants, even though nothing had changed and no new facts had come to light. The proposed Amended Complaint has not yet been officially filed by Plaintiff and/or approved by the Court, and thus neither Ms. Adamy nor Mr. Palleta have yet been served.

## III. PLAINTIFF'S MOTION FOR JOINDER AND TO REMAND SHOULD BE DENIED

### A. Defendant Dow Jones Properly Removed this Case Based on Diversity Jurisdiction

Civil actions filed in state court are generally removable to the U.S. District Court where "the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Specifically, an action is removable if the amount in controversy exceeds $75,000, there is

complete diversity of citizenship between the parties, and "if none of the parties in interest *properly joined and served* as defendants is a citizen of the State in which such action is brought." 28 U.S.C. §§ 1332, 1441(b) (emphasis added).

Plaintiff seeks remand alleging that this Court does not have proper subject matter jurisdiction as required by 28 U.S.C. § 1332. However, in its Notice of Removal, Defendant established that this Court properly has subject matter jurisdiction of this case under 28 U.S.C. § 1332(a)(1) because: (a) the removal was timely; (b) there is complete diversity of citizenship between Plaintiff and the only true defendant in the case, Dow Jones; and (c) the amount in controversy exceeds $75,000.00 exclusive of interest and costs. *See Porsche Cars N. Am. V. Porsche.net*, 302 F.3d 248, 255-56 (4th Cir. 2002) ("a court determines the existence of diversity jurisdiction at the time the action is filed…") (citations omitted).

Diversity jurisdiction requires complete diversity of citizenship both at the time that the case is commenced and at the time that the notice of removal is filed, both of which occurred here. *See e.g. Johnson v. SmithKline Beecham Corp.,* 724 F.3d 337, 346 (3d Cir. 2013) ("Diversity of citizenship must have existed at the time the complaint was filed and at the time of removal") (citations omitted); *Baker v. Tri-Nations Express, Inc.,* 531 F. Supp. 2d 1307, 1317 (M.D. Ala. 2008) ("[C]ourts must 'look to two specific moments to determine whether diversity of citizenship exists: the moment the complaint is filed and the moment the notice of removal is filed'"); *Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C.,* 176 F.3d 904, 907 (6th Cir. 1999) ("In order for a defendant to remove a case to federal court based upon diversity jurisdiction, there must be complete diversity of citizenship both at the time the case is commenced and at the time that the notice of removal is filed.").

Only now, after this matter was already timely and properly removed to this Court, has Plaintiff suddenly decided to add individual defendants, one of whom destroys diversity. But "if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events." *Freeport–McMoRan, Inc. v. K N Energy,* 498 U.S. 426, 428, 111 S.Ct. 858, 112 L.Ed.2d 951 (1991).

It is apparent that the sole reason Plaintiff wishes to add Ms. Adamy as an individual defendant at this time is to avoid federal jurisdiction. Plaintiff was well aware of each and every fact concerning Ms. Adamy at the time she filed the D.C. Superior Court Action, and nothing changed between the filing of that original action and now, other than removal. Perhaps even more telling of Plaintiff's true motive and intention is that her Original Complaint contains a footnote stating that "Defendant's actions also violated the Americans with Disabilities Act, as amended, and Ms. Armour is in the process of exhausting her administrative remedies with respect to those claims. Once that occurs, **this Complaint may be amended to add her federal claims**." *See* ECF No. 1-2 at 3 (emphasis added). But in discussing the motion for remand, Plaintiff's counsel specifically told counsel for Dow Jones that Plaintiff has now decided not to pursue a claim under the Americans with Disabilities Act, a claim which would give rise to federal question jurisdiction.

Courts have held that amendments to a complaint solely for the purpose of divesting jurisdiction is improper. *See e.g. Zuurbier v. MedStar Health, Inc.*, 306 F. Supp. 2d 1, 7 (D.D.C. 2004) (internal quotation omitted) ("The rule governing remand is clear: If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court."); *see also Freeport v. McMorran, Inc., 4*98 U.S. at 426. ("[I]f jurisdiction exists at the time

6

an action is commenced such jurisdiction may not be divested by subsequent events.") Plaintiff's transparent effort to join Ms. Adamy solely to defeat diversity jurisdiction should not be condoned.

### B. Plaintiff's Attempt to Join Ms. Adamy is Fraudulent Since Plaintiff Cannot Establish a Viable Claim Against Her

"The doctrine of fraudulent joinder permits a federal court to 'disregard, for jurisdictional purposes,' the citizenship of non-diverse defendants. A defendant alleging fraudulent joinder must show either that: (1) 'there is no possibility that the plaintiff would be able to establish a cause of action' against the non-diverse party, or (2) there has been 'outright fraud in the plaintiff's pleading of jurisdictional facts.'" *McFadden v. Fed. Nat'l Mortgage Ass'n*, 525 Fed. Appx. 223, 227 (4th Cir. 2013) (internal citations omitted); *Riverdale Baptist Church v. CertainTeed Corp.*, 349 F. Supp. 2d 943, 947 (D. Md. 2004).

In the present matter, there is no possibility that Plaintiff can establish a cause of action against Ms. Adamy, and the joinder of Ms. Adamy by Plaintiff solely to defeat diversity jurisdiction should be rejected. *See McFadden*, 525 Fed. Appx. at 230 ("Because we conclude that the McFaddens lacked any possibility of prevailing on their three claims against White, P.C., we hold that, under the fraudulent joinder doctrine, the citizenship of White, P.C. should not be considered for jurisdictional purposes."); *Hughes v. Wells Fargo Bank, N.A.*, 617 Fed. Appx. 261, 265 (4th Cir. 2015) ("Hughes' quiet title claim was therefore properly dismissed pursuant to Rule 12(b)(6), and it failed to provide even "a slight possibility of a right to relief" against SIWPC that would refute Defendants' claim of fraudulent joinder."); *Turner v. J.P. Morgan Chase Bank, N.A.*, 543 Fed. Appx. 300, 301 (4th Cir. 2013) ("[W]e agree that the substitute trustees were fraudulently joined. Even assuming that the Turners were entitled to and did not receive notice of the relevant foreclosure proceedings, any claim against the substitute trustees arising from the lack of notice is clearly barred by the applicable three-year statute of limitations.")

079607248dceb779

### 1. Any Allegations Made by Plaintiff Concerning Events Prior to July 9, 2023 Are Time-Barred and Therefore Not Actionable

Almost all of the allegations concerning Ms. Adamy in Plaintiff's Complaint and in the proposed Amended Complaint are untimely. A plaintiff must file a private cause of action under the DCHRA within one year of the alleged unlawful discriminatory act. *See* D.C. Code § 2–1403.16(a). Plaintiff Filed her Complaint on July 9, 2024, so any claims or allegations concerning actions taken by Ms. Adamy prior to July 9, 2023 are time-barred and not actionable. *See e.g. Byrd v. District of Columbia*, 538 F. Supp. 2d 170, 176 (D.D.C. 2008) (dismissing DCHRA claim filed more than one year after the Plaintiff's employment was terminated).

The reality of limitations is especially critical here, given that Ms. Admay has not supervised Plaintiff for over a decade and her interaction with Plaintiff over the last several years has been limited to providing feedback on story ideas and on the rare occasions, editing her copy. *See* Adamy Decl. *at* ¶¶ 3, 5. The substance of Plaintiff's complaint alleges a constructive termination, based upon what she characterizes as "fraudulent" disciplinary action and criticism of her job performance, all of which originated with her direct manager, Mr. Palleta. The few allegations in the Complaint involving actions by Ms. Adamy occurring after July 9, 2023 are insufficient to state a valid cause of action against her.

### 2. Plaintiff Cannot Establish a Failure to Accommodate Claim Against Ms. Adamy (Count I)

In Count I, Plaintiff attempts to state a failure to accommodate claim. As such, Plaintiff must demonstrate that (1) she had a disability, (2) her employer knew about her disability, (3) she can perform the essential functions of her position with or without a reasonable accommodation, and (4) a reasonable accommodation could have been made, *but was denied*, by defendant for

...

plaintiff's disability." *Campbell v. Functional Pathways, LLC*, Civil Action No. 23-1507 (BAH), 2024 U.S. Dist. LEXIS 76239, at *37 (D.D.C. Apr. 26, 2024) (emphasis added). Additionally, "[t]o create an issue for the jury," plaintiff must point to 'sufficient evidence' in the record showing that they requested an accommodation and 'that, after the request, [defendant] refused to make an accommodation.'" *Congress v. Gruenberg*, 643 F. Supp. 3d 203, 221 (D.D.C. 2022) (quoting *Stewart v. St. Elizabeths Hosp.*, 589 F.3d 1305, 1308 (D.C. Cir. 2010)); *see Edwards v. U.S. EPA*, 456 F. Supp. 2d 72, 102 (D.D.C. 2006) (JDB) ("[T]he dispositive issue is whether [plaintiff] requested and was denied an accommodation.").

In the present matter, Plaintiff concedes that each time she made an official accommodation request to Dow Jones, it was granted:

> (1) Plaintiff alleges that in 2015, she filed a formal ADA accommodation request, and shortly thereafter the WSJ granted her an ADA accommodation which allowed her to work from home two days a week, *see* Compl. ¶ 24, 26;
>
> (2) In 2022, Plaintiff alleges that she spoke with leadership about needing to work from home both for her accommodation and her son's medical issues, and then admits that she was permitted to work from home as often as needed, *See id.* ¶ 34;
>
> (3) In March 2024, Plaintiff filed a formal request for an additional ADA remote work accommodation, which the WSJ granted, *see id.* ¶ 51–52.

In addition to there being no denial of an accommodation request by Dow Jones, Plaintiff does not even allege in her Complaint or in the proposed Amended Complaint <u>that Ms. Adamy</u> denied Plaintiff an accommodation during the actionable time period, after July 9, 2023. This is unsurprising, given that Ms. Adamy was not involved with nor had any authority to approve or deny accommodation requests, either during her supervision of Plaintiff or at any time thereafter. *See* Adamy Decl. *at* ¶ 4.

"[A]n employer must have denied the employee's reasonable accommodation request to constitute an actionable claim." *Congress v. Gruenberg*, 643 F. Supp. 3d 203, 223 (D.D.C. 2022) (citing *Flemmings v. Howard Univ.*, 339 U.S. App. D.C. 110, 198 F.3d 857, 861 (1999)). Because there is not (and factually cannot be) an allegation that Ms. Adamy denied an accommodation request for Plaintiff on or after July 9, 2023, such claim against Ms. Adamy is futile.

### 3. Plaintiff Cannot Establish an Intentional Disability Discrimination Claim Against Ms. Adamy (Count II)

Plaintiff also cannot demonstrate a claim of intentional disability discrimination against Ms. Adamy. It is black letter law that, to establish a claim of discrimination, a Plaintiff must first establish an adverse action, but the only adverse actions alleged by Plaintiff in the original Complaint and the proposed Amended Complaint during the actionable time period (after July 9, 2023) relate to discipline and write-ups, and this Circuit has repeatedly held that disciplinary actions, performance improvement plans, and poor evaluations, without more, are not material adverse employment actions. *See e.g. Walden v. Patient-Centered Outcomes Rsch. Inst.,* 304 F. Supp. 3d 123, 137 (D.D.C. 2018) ("PIPs are not typically adverse employment actions without some additional effect on an employee's grade or salary."); *Turner v. Shinseki*, 824 F. Supp. 2d 99, 116 (D.D.C. 2011) ("In this Circuit, performance reviews, or criticisms of an employee's job performance are not actionable, unless they are tied to the employee's bonus, or result in some other material employment action."); *Taylor v. Small,* 350 F.3d 1286, 1293 (D.C. Cir. 2003) (finding that a PIP was not an adverse employment action because plaintiff did not present evidence suggesting she suffered any significant change in employment status).

Evidently recognizing this basic legal failing, Plaintiff claims that issuing her a performance warning "amounted to constructive discharge." Compl. ¶ 60. "To prove constructive discharge, a plaintiff must show that their employer (1) intentionally discriminated against them,

10

and (2) in doing so, deliberately made working conditions so objectively intolerable that a reasonable person would feel compelled to resign." *Valentine v. Towers Condo. Ass'n*, No. 22-cv-3216 (JMC), 2024 U.S. Dist. LEXIS 53131, at *7 (D.D.C. Mar. 26, 2024). "The conduct, in fact, must amount to more than that required to support a hostile-work-environment claim so that the plaintiff's resignation qualifies as a fitting response to the discrimination." *René v. Granholm*, Civil Action No. 22-519 (JEB), 2022 U.S. Dist. LEXIS 228893, at *24 (D.D.C. Dec. 20, 2022) (citing *Steele v. Schafer*, 383 U.S. App. D.C. 74, 535 F.3d 689, 694–95 (2008)). "A finding of constructive discharge thus 'requires a finding of discrimination *and* the existence of certain 'aggravating factors' that would force a reasonable employee to resign." *Watkins v. Wash. Metro. Area Transit Auth.*, No. 13-cv-0963, 2023 U.S. Dist. LEXIS 57431, at *25-26 (D.D.C. Mar. 31, 2023) (citing *Veitch v. England*, 471 F.3d 124, 130, 374 U.S. App. D.C. 1) (emphasis added). "The 'severe and pervasive' requirement of a hostile work environment also applies to the 'aggravating factors' of a constructive discharge claim based on a hostile work environment." *Watkins*, 2023 U.S. Dist. LEXIS 57431, at *26.

Plaintiff claims that receiving her first performance warning "commence[d] [the] termination process," and she thus was "forced to resign." Compl. ¶ 58–59. But being issued a performance warning is not enough to show that the working conditions were so objectively intolerable. "Implementation of a Performance Improvement Plan, and stress from working with a critical supervisor are not the sort of "aggravating factors" necessary to support a constructive discharge claim." *Sims v. Sunovion Pharms., Inc.*, Civil Action No. 17-2519 (CKK), 2019 U.S. Dist. LEXIS 25802, at *36 (D.D.C. Feb. 19, 2019); *see also Manuel v. Potter*, 685 F. Supp.2d 46, 62 (D.D.C. 2010) (placement on performance improvement plan and other routine actions were insufficient to state a claim for constructive discharge); *Walden v. Patient-Centered Outcomes*

*Research Inst.*, 177 F. Supp. 3d 336, 346 (D.D.C. 2016) (holding that being put on a performance improvement plan is "not so harsh that [it] rise[s] to the level of aggravating factors which would justify Plaintiff's conclusion that she had to resign.")

Regardless, even if Plaintiff was able to establish a viable claim for constructive discharge here, her Complaint is utterly devoid of any assertion that Ms. Adamy was actually involved in the creation of an alleged intolerable work environment after July 9, 2023. Ms. Adamy was not Plaintiff's supervisor in 2023 or 2024, and had nothing whatsoever to do with her performance management, discipline or write-ups during the relevant time period. *See* Adamy Decl. ¶ ¶ 2,3,5. Accordingly, Plaintiff's attempted disability discrimination claim against Ms. Adamy fails as a matter of law.

### 4. Plaintiff Cannot State a Claim of Retaliation Against Ms. Adamy (Count III)

Plaintiff's attempt to state a claim of retaliation against Ms. Adamy fares no better than her disability discrimination claim. In fact, such claim against Ms. Adamy would be nonsensical. A claim of retaliation requires Plaintiff to establish that: (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) there is a causal connection between the two. *See Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 68 (D.C. Cir. 2015).

As discussed in detail above, Plaintiff cannot state a claim for constructive discharge or any other actionable adverse action, and on that basis alone her retaliation claim fails. Even more importantly, however, Plaintiff cannot state a retaliation claim against Ms. Adamy because Ms. Adamy was not involved with her accommodation requests nor in Mr. Paletta's decision to issue a performance warning.

Furthermore, there are no allegations that Ms. Adamy specifically had any knowledge of Plaintiff's purported protected activity. Instead, Plaintiff makes generalized and conclusory

allegations, grouping Ms. Adamy as part of "Defendants," despite the fact that Ms. Adamy had no management oversight over Plaintiff after February 2015, and no involvement in her accommodation requests. *See* Adamy Decl. ¶¶ 3,4. To the contrary, Plaintiff even concedes in her Complaint that it was Mr. Paletta who was involved in personnel decisions, not Ms. Adamy, when she states that Mr. Paletta was responsible for the "direct supervision of Ms. Armour," Compl. ¶ 54, and "it was clear to Ms. Armour that **Paletta intended to fire her**…" Compl. ¶ 57 (emphasis added). As a result, Plaintiff is unable to establish a retaliation claim against Ms. Adamy.

### 5. Plaintiff Cannot State a Claim of Civil Fraud Against Ms. Adamy (Count V)[3]

Finally, in Count V, Plaintiff attempts to bring a claim of civil fraud, claiming that "false statements of material facts concerning [Plaintiff]'s employment performance" were made in the performance warning and otherwise. Compl. ¶ 102. To state a claim of civil fraud in the District of Columbia, "a plaintiff must prove (1) a false representation, (2) in reference to a material fact, (3) made with knowledge of its falsity, (4) with intent to deceive, and (5) action taken in reliance upon the representation, (6) which resulted in provable damages." *Washington v. Thurgood Marshall Academy*, 2006 WL 1722332, at *11 (D.D.C. 2006) (quoting *Dresser v. Sunderland Apartments Tenants Ass'n, Inc.,* 465 A.2d 835, 839 (D.C.1983). Fraud must be established by clear and convincing evidence "that is not equally consistent with honesty or deceit." *Bennett v. Kiggins*, 377 A.2d 57, 59 (D.C. 1977). "Failure to prove any one element of fraud causes a fraud claim to fail." *Washington*, 2006 WL 1722332, at 11.

In the present matter, Plaintiff has not alleged that Ms. Adamy ever made a false representation of material fact about Plaintiff's performance. As reiterated throughout, Ms. Adamy

---

[3] Count IV of the proposed Amended Complaint for breach of contract is only brought against Dow Jones, not Ms. Adamy.

was not involved in the issuance of Plaintiff's Performance Warning, had nothing to do with her supervision in 2023 and 2024, and had only minimal interaction with Plaintiff during the relevant time period about a few story ideas and, on rare occasions, editing her copy. *See* Adamy Decl. ¶ ¶ 2,3, 5. To the contrary, it was Mr. Paletta that put Plaintiff on the warning which allegedly created a constructive discharge, not Ms. Adamy. *See e.g.* Compl. ¶55; Proposed Am. Compl. ¶ 56. As a result, the claim for civil fraud against Ms. Adamy is futile.

## IV.     CONCLUSION

Given that she will not be able to prevail on any claim against Ms. Adamy, Plaintiff should not be allowed to subvert this Court's diversity jurisdiction by joining Ms. Adamy as a defendant solely for the purpose of defeating the removal to this court. *See McFadden*, 525 Fed. Appx. at 230 ("Because we conclude that the McFaddens lacked any possibility of prevailing on their three claims against White, P.C., we hold that, under the fraudulent joinder doctrine, the citizenship of White, P.C. should not be considered for jurisdictional purposes."). Plaintiff's gamesmanship should not be tolerated by the Court, and her Motion for Joinder of Ms. Adamy and for Remand should therefore be denied.

Dated:  September 18, 2024          Respectfully submitted,

  */s/ Robert R. Niccolini*
Robert R. Niccolini, D.C. Bar No. 1000251
OGLETREE, DEAKINS, NASH,
 SMOAK & STEWART, P.C.
1909 K Street, N.W., Suite 1000
Washington, DC 20006
Tel:  (202) 887-0855
Fax:  (202) 887-0866
Robert.niccolini@ogletreedeakins.com

*Counsel for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on this September 18, 2024, I caused the foregoing to be filed via the Court's CM/ECF system, which served an electronic copy to Plaintiff's counsel:

Robert Housman
Book Hill Partners
9001 Clifford Avenue
Chevy Chase, MD 20815
(202) 476-5874

*Counsel for Plaintiff*

 */s/ Robert R. Niccolini*
Robert R. Niccolini, D.C. Bar No. 1000251
OGLETREE, DEAKINS, NASH,
 SMOAK & STEWART, P.C.
1909 K Street, N.W., Suite 1000
Washington, DC 20006
Tel:  (202) 887-0855
Fax:  (202) 887-0866
robert.niccolini@ogletreedeakins.com

*Counsel for Defendant*