## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STEPHANIE ARMOUR,<br><br>                    Plaintiff,<br><br>v.<br><br>DOW JONES & COMPANY, INC.,<br><br>                    Defendant. | Civil Action No. 24-2309 (BAH)<br><br>Judge Beryl A. Howell |

### MEMORANDUM OPINION

Stephanie Armour ("plaintiff") sued Dow Jones & Co. ("defendant"), the owner and operator of plaintiff's former employer the Wall Street Journal ("WSJ"), in the Superior Court for the District of Columbia ("D.C. Superior Court"), asserting violations of the District of Columbia's Human Rights Act ("DCHRA") and causes of action for common law breach of contract and civil fraud. *See* Defendant's Notice of Removal ("Def.'s Not."), ECF No. 1, Ex. A, Compl. ¶¶ 91-102, ECF No. 1-2. Defendant properly removed the case to federal court, pursuant to 28 U.S.C. § 1441, as complete diversity exists among the parties and the amount in controversy exceeds $75,000. Def.'s Not. ¶¶ 1-17; *id.*, Ex. D, Decl. of Kevin G. Chapman, Def.'s Assoc. Gen. Coun., ¶¶ 3-4, ECF No. 1-5; Compl. ¶¶ 85-90; *see Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 83 (2005) ("[Title] 28 U.S.C. § 1441 . . . authorizes the removal of civil actions from state court to federal court when the action initiated in state court is one that could have been brought, originally, in a federal district court."); *Guaranty Tr. Co. of N.Y. v. York*, 326 U.S. 99, 106 (1945) ("[A] federal court in diversity jurisdiction is available as an alternative tribunal to the State's courts.").

Plaintiff now invokes Federal Rule of Civil Procedure 20(a)(2) to join Damian Paletta ("Paletta") and Janet Adamy ("Adamy") as defendants. *See* Pl.'s Mot. Join & Remand ("Pl.'s Mot.") at 1, ECF No. 5; *id.*, Attach. A, Proposed Amend. Compl. ("Prop. Amend. Compl.") ¶¶ 1-5, ECF No. 5-2. According to plaintiff, these two individuals "took over the day-to-day supervision of [her]" following a "change of leadership at the Wall Street Journal" in 2024, Pl.'s Mem. at 2, and allegedly "carried out the acts of employment discrimination, retaliation and fraud" described in plaintiff's Proposed Amended Complaint, Pl.'s Mem. Supp. Pl.'s Mot. ("Pl.'s Mem.") at 1, ECF No. 5-1; *see also* Prop. Amend. Compl. ¶¶ 40-84. If joinder is granted with respect to Adamy, the case must "be remanded to the DC Superior Court," Pl.'s Mem. at 2-4, because joinder would defeat the requirement of complete diversity. *See id.*; Def.'s Opp'n Pl.'s Mot. ("Def.'s Opp'n") at 1, ECF No. 8; 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

For the reasons stated below, plaintiff's motion for joinder and remand to Superior Court is granted.

## I.    BACKGROUND

A review of the factual background and procedural history is summarized below.[1]

### A.  Relevant Factual Allegations

In November 2013, plaintiff began working at the WSJ, a "media propert[y]" owned and published by the defendant, Prop. Amend. Compl. ¶¶ 9-10, on the understanding that she could work from home "on a regular basis," *id.* ¶ 19, primarily due to her "anxiety [] and post-

---

[1]    The factual background is drawn from plaintiff's Proposed Amended Complaint, which adds Paletta and Adamy as defendants in the action and is the pleading plaintiff intends to file upon remand. The allegations in the Proposed Amended Complaint largely track those in the original Complaint, with some supplementation.

traumatic stress disorder," which were "well-documented by her treating physicians" and "constitute[] a disability under the DC Human Rights Act," *id.* ¶ 17.  Approximately six months thereafter, plaintiff began working under Adamy's supervision.  *Id.* ¶¶ 10, 20.  She alleges that following "an otherwise routine disagreement over a story" in January 2015, Adamy attempted to prevent plaintiff from working remotely.  *Id.* ¶¶ 21-23.  In March 2015, the WSJ approved a formal ADA accommodation for plaintiff allowing her to work from home two days per week over Adamy's objection.  *Id.* ¶¶ 21-27.  Plaintiff alleges that the accommodation "did not deter Adamy" but "upset [her] even more, causing her to take retributive actions on [plaintiff]."  *Id.* ¶ 28.  Sometime after March 2015, plaintiff no longer reported to Adamy.  *Id.* ¶ 31.

In November 2020, due to a corporate restructuring, Adamy almost became plaintiff's supervisor again, but when plaintiff protested the reassignment due to Adamy's prior hostility to her disability accommodation, plaintiff received a different placement.  *Id.*  In February 2020, the WSJ "went fully remote as a result of the pandemic," *id.* ¶ 32, and plaintiff thereafter worked in a fully remote capacity "for a period of two years," *id.* ¶ 33.  In August 2022, a "Flexible Work Policy" was implemented, whereby employees would work "in office three-days-a [] week."  *Id.* ¶ 34.  Around this time, "WSJ leadership" informed plaintiff that her "work performance was strong" and permitted her to "work from home as often as needed."  *Id.* ¶ 35.  Plaintiff worked only "one to two days of the week" in the office "[f]rom August 2022 until February 2024."  *Id.* ¶ 36.  Despite her working in a mostly remote capacity, *id.* ¶ 37, she "was able to perform the essential functions of her job with [the] accommodation," *id.* ¶ 36, and she "continued to receive outstanding performance reviews," *id.* ¶ 37.

Around February 2024, due to a further restructuring at the WSJ, Adamy "was promoted to Washington Deputy Coverage Chief to run day-to-day operations," while Paletta was named

"as the WSJ's DC Coverage Chief (Bureau Chief)." *Id.* ¶ 41. The restructuring also led to Adamy and Paletta supervising plaintiff. *Id.* ¶¶ 10, 42, 72, 81. Soon after the February 2024 restructuring, Adamy "began to comment negatively on [plaintiff's] remote work accommodations," and on March 4, 2024, "direct[ed] her to be in the office to discuss story ideas." *Id.* ¶ 44. Thereafter, on March 13, 2024, Paletta began "requir[ing] [plaintiff] to be in the office three days a week," *id.* ¶ 46, and showed hostility towards plaintiff's remote work accommodations, *see id.* ¶¶ 46-54. Between March 13 and April 16, 2024, plaintiff "photographically documented that the WSJ offices were all but empty day-in-and-day-out," though she still "complied with Paletta's requirement" despite its "negative effect on her physical and emotional well-being." *Id.* ¶ 54. Plaintiff sought "an additional ADA remote work accommodation" on March 20, 2024, *id.* ¶ 52, which the WSJ granted on April 16, 2024, *id.* ¶ 53.

On April 24, 2024, soon after the WSJ granted plaintiff's additional accommodation, "Paletta summoned [plaintiff] to a Performance Warning Meeting" and "issued her a formal performance warning, which is the first step in the WSJ's termination for cause process." *Id.* ¶ 56. The warning "triggered a 30-day review period" of plaintiff's performance, *id.* ¶ 57, the metrics of which "were themselves discriminatory/retaliatory and purposefully unattainable," *id.* ¶ 58. According to plaintiff, "[i]t was widely known that, once this process was begun, termination was almost always the result." *Id.* ¶ 57. Prior to coming under Adamy and Paletta's supervision in 2024, plaintiff (1) "ha[d] been nominated for a Pulitzer Prize on four occasions, including twice by the WSJ, in 2021," *id.* ¶ 11, (2) had been described "as 'stellar,' and 'amazing,'" *id.* ¶ 39, and (3) "was awarded a performance bonus" for her "fully remote reporting," *id.* ¶ 39. Plaintiff, believing that Paletta and Adamy "were constructing a false justification to terminate her for cause," resigned from the WSJ on June 17, 2024, *id.* ¶ 60, and

alleges that their actions were unlawful, retaliatory, discriminatory, and constitute constructive termination, *see id.* ¶¶ 56-70.

### B. Procedural History

Plaintiff commenced this action against defendant in the D.C. Superior Court on July 9, 2024, *see* Compl., alleging that defendant (1) violated the DCHRA by engaging in unlawful and intentional discrimination, retaliation, and termination based on her disability, *id.* ¶¶ 91-96, (2) breached the terms of a "collective bargaining agreement" between defendant and plaintiff's union, the Independent Association of Publishers' Employees, *id.* ¶¶ 97-100, and (3) committed civil fraud by "ma[king] false statements of material facts concerning [plaintiff's] employment performance," *id.* ¶¶ 101-102.

Defendant, in response, timely filed a notice of removal on August 7, 2024, requesting a federal district court to exercise diversity jurisdiction over the instant claims under 28 U.S.C. § 1332(a). *See* Def.'s Not. at 1; *see also* 28 U.S.C. § 1441(a) (establishing a defendant's right of removal); 28 U.S.C. § 1446(c) (setting forth the requirements for removal based on diversity). As support for removal, defendant stated that: (1) "Plaintiff is a citizen of the District of Columbia" because, in her complaint, she listed her address as being in Washington D.C., Def.'s Not. at 2; (2) because its headquarters are in New York, while Delaware is its state of incorporation, *see id.* at 2-3, "Defendant is a citizen of New York and Delaware," *id.* ¶ 13; and (3) the amount in controversy exceeds $75,000.00, *see id.* at 3. Based on these jurisdictional facts, which plaintiff has not disputed, removal was properly granted on August 12, 2024.[2]

---

[2]     "[T]he party seeking the exercise of diversity jurisdiction bears the burden of pleading the citizenship of each and every party to the action." *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 792 (D.C. Cir. 1983). Defendant supported removal here by pleading both the correct jurisdictional amount under 28 U.S.C. § 1446(c), its own corporate citizenship in New York and Delaware, and plaintiff's D.C. citizenship. *See* Def.'s Not. at 2-3. Thus, at the time of removal, defendant properly alleged complete diversity between the parties. *See* 28 U.S.C. § 1332(a); 28 U.S.C. § 1441(b).

On August 14, 2024, plaintiff filed the instant motion to join Paletta and Adamy as defendants under Federal Rule of Civil Procedure 20(a)(2), Pl.'s Mot. at 1, and a Proposed Amended Complaint detailing causes of action against Paletta and Adamy for disability discrimination, intentional disability discrimination, disability discrimination retaliation in employment, and civil fraud, *see* Prop. Amend. Compl. ¶¶ 91-96, 101-102.  Plaintiff requested that if Paletta and Adamy are joined as defendants that the case be remanded to D.C. Superior Court because "Adamy is a resident of the District of Columbia."  Pl.'s Mem. at 2.  Defendant opposes this motion, which is ripe for resolution.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 20 authorizes the joinder of defendants "in one action" when two conditions are met: "(A) any right to relief is asserted against them . . . with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."  FED. R. CIV. P. 20(a)(2); *see also AF Holdings, LLC v. Does 1-1058*, 752 F.3d 990, 997 (D.C. Cir. 2014) ("[M]ultiple defendants may be joined in one action if the plaintiff seeks relief 'with respect to or arising out of the same transaction, occurrence, or series of transaction or occurrences' and 'any question of law or fact common to all defendants will arise in the action.'"  (quoting Fed. R. Civ. P. 20(a)(2))).  This Rule is "to be read as broadly as possible," 7 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE JURISPRUDENCE § 1653 (3d ed. June 2024 update), in furtherance of "public policy" by allowing "disposition of a whole controversy at one time and in one action," *Conafay v. Wyeth Lab'ys*, 793 F.2d 350, 353 (D.C. Cir. 1986) (citing Fed. R. Civ. P. 20).

To satisfy the same-transaction-or-occurrence prong, the claims need only be "logically related," *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974), to one another because "'[t]ransaction' is a word of flexible meaning," *Moore v. N.Y. Cotton Exch.*, 270 U.S. 593, 610 (1926), that "comprehend[s] a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship," *id.* A liberal application of the logical-relationship test is "strongly encouraged" as "the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties." *United Mine Workers of Am. v. Gibbs*, 383 US. 715, 724 (1966). The common-question prong is similarly "permissive" and requires only that there be some questions of law or facts as to all the plaintiff's claims—"not . . . that all questions of law and fact raised by the dispute be common." *Mosley*, 497 F.3d at 1334.

When a plaintiff moves to join a non-diverse defendant post-removal, which "destroy[s] subject matter jurisdiction," a court has two options: (1) "deny[ing] joinder" or (2) "permit[ting] joinder and remand[ing] the action to the [s]tate court." 28 U.S.C. § 1447(e); *see Mayes v. Rapoport*, 198 F.3d 457, 461-62 (4th Cir. 1999) ("When a plaintiff seeks to join a nondiverse defendant after the case has been removed, the district court's analysis begins with 28 U.S.C. § 1447(e), which provides the district court with two options . . . the court may deny joinder, or permit joinder and remand the action to the State court." (internal quotation marks omitted) (quoting 28 U.S.C. § 1447(e))). To permit joinder in this circumstance, a plaintiff must satisfy the standard set out in Rule 20(a)(2) and show that "equitable concerns" weigh in her favor, ensuring that her motivation in seeking joinder is not to avoid the jurisdiction of federal court. 14C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure Jurisprudence ("14C Wright & Miller") § 3739.1 (Rev. 4th ed. June 2024 update); *see e.g.*,

*Avenatti v. Fox News Network LLC*, 41 F.4th 125, 133 (3d Cir. 2022) ("Once jurisdiction has vested in a federal court—which it did here upon removal from state court—careful scrutiny should be applied to any post-removal events threatening to wrench that jurisdiction away.").

To police abuse of post-removal joinder that meets Rule 20(a)(2)'s standard but will "deprive [a] federal court of jurisdiction," 14C WRIGHT & MILLER § 3739.1, "courts look to a variety of factors," including: (1) "the motivation for the joinder"; (2) "whether the plaintiff was dilatory in seeking joinder"; (3) "prejudice to the existing defendants if the joinder is permitted"; (4) "prejudice to the plaintiff if the joinder is not permitted"; (5) "judicial efficiency and economy"; (6) "as well as other equitable concerns" in deciding that joinder is "equitable," and thus, permitting joinder and remanding the case to state court pursuant to 28 U.S.C. § 1447(e). *Id.*; *see e.g. Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987) (describing these factors "when faced with a . . . Rule 20 [motion that] permits joinder of proper parties" because "justice requires that the district court consider a number of factors to balance the defendant's interest in maintaining the federal forum with the competing interests of not having parallel lawsuits"); *Avenatti*, 41 F.4th at 131-33 (adopting the *Hensgens* factors to evaluate a district court's decision involving post-removal joinder of a non-diverse party); *Hickerson v. Enter. Leasing Co. of Ga., LLC*, 818 F. App'x 880, 885-86 (11th Cir. 2020) (same); *Bailey v. Bayer CropScience L.P.*, 563 F.3d 302, 307-09 (8th Cir. 2009) (same); *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 762 (7th Cir. 2009) (same); *Mayes*, 198 F.3d at 461-63 (same); *Casas Off. Machs., Inc. v. Mita Copystar Am., Inc.*, 42 F.3d 668, 675 n.8 (1st Cir. 1994) (approvingly citing *Hensgens* for the proposition that it "describ[es] factors that district courts may consider in deciding whether or not to permit the addition of dispensable, nondiverse parties"); *accord Burka v. Aetna Life Ins. Co.*, 87 F.3d 478, 481 n.5 (D.C. Cir. 1996) (discussing approvingly of the

district court's analysis of the *Hensgens* factors as described in *Wyant v. Nat'l R.R. Passenger Corp.*, 881 F. Supp. 919 (S.D.N.Y. 1995)).

## III.    DISCUSSION

Plaintiff argues that her claims against Adamy and Paletta satisfy the conditions for joinder under Rule 20(a)(2) and that equitable considerations favor joinder and remand to state court.  Pl.'s Mot. at 5-8.  While not opposing the joinder of Paletta, a "citizen and resident of Virginia" whose "addition to the case as an individual defendant does not impact the diversity jurisdiction analysis or require remand," Def.'s Opp'n at 1, defendant objects to plaintiff's effort to add Adamy as a defendant, arguing it is improper and amounts to fraudulent joinder to destroy diversity jurisdiction, *id*. at 7.  These arguments are addressed in turn.

### A.    Joinder of Adamy is Permissible

To satisfy Rule 20(a)(2)'s first prong, plaintiff must show only that her claims against Adamy are "logically related," *Montgomery v. STG Int'l., Inc.*, 532 F. Supp. 2d 29, 35 (D.D.C. 2008), to those she has already asserted against defendant in Count One for disability discrimination, Count Two for intentional disability discrimination, Count Three for disability discrimination retaliation in employment, and Count Five for civil fraud.  Compl. ¶¶ 91-96, 101-102; Prop. Amend. Compl. ¶¶ 91-96, 101-102.  Plaintiff has done so.  She alleges that after WSJ underwent a restructuring in early 2024, she reported to, and was supervised by, Paletta and Adamy.  Prop. Amend. Compl. ¶¶ 10, 42, 72, 81.  After this restructuring, Adamy "[a]lmost immediately . . . began to comment negatively on [plaintiff's] remote work accommodations."  *Id.* ¶ 44.  On March 14, 2024, Adamy attended a meeting with Paletta and plaintiff where Paletta told plaintiff that she "need[ed] to be in 3 days a week and I don't want to have this conversation again," *Id.* ¶ 47.  In response to these demands, plaintiff "explained [to Paletta] that she needed

to work remotely because of an ongoing medical condition—a condition that was being exacerbated by Paletta's and Adamy's actions towards her." *Id.* ¶ 49.  On March 20, 2024, plaintiff filed a formal request for an additional ADA remote work accommodation where she documented "Paletta's and Adamy's consistent opposition to any such accommodations," *id.* ¶ 52, which request was approved on April 16, 2024, *id.* ¶ 53.  Plaintiff further alleges that "Adamy. . . repeatedly [took] actions to prevent," *id.* ¶ 80, plaintiff from succeeding in her division by taking story ideas she generated and assigning them to other reporters and then negatively reviewing her on her inability to report on newsworthy events which hurt her performance evaluation reviews, *see* id*.* ¶¶ 80-82.  Plaintiff argues that "WSJ, specifically to include agents Paletta and Adamy, knew [plaintiff] had sought an accommodation and took actions against her as a result" and "was not going to require Paletta and Adamy to judge her work objectively during the warning period." *Id.* ¶ 60.  In essence, plaintiff contends that Adamy, along with Paletta, were "the agents and instrumentalities of the original Defendant" in its efforts to "deny her reasonable accommodations; retaliate against her for seeking such accommodations; and create a fraudulent employment record to justify her constructive termination."  Pl.'s Mem. at 5-6; *see* Prop. Amend. Compl. ¶¶ 10, 42, 44-45, 47, 52-54, 56-84.

Focusing solely on the allegations, without making any finding about the plausibility of plaintiff's claims, plaintiff alleges sufficient facts effectively to "contend that [Paletta] and [Adamy] [were] participants in the same overarching scheme" at WSJ to retaliate against plaintiff for her disability accommodation.  *See Council on Am.-Islamic Rels. Action Network, Inc. v. Gaubatz*, 891 F. Supp. 2d 13, 30-31 (D.D.C. 2012) (granting joinder of defendants who were part of the same scheme to infiltrate plaintiffs' offices to obtain their documents).  Plaintiff claims, in particular, that Adamy, who was employed by WSJ in supervisory capacities, allegedly

disparaged plaintiff's remote-work accommodation and assigned her story ideas to other reporters with concomitant negative impact on plaintiff's performance review as a pretense for firing her for her accommodation.  These claims and underlying allegations logically relate to her claims against defendant and thus "arise out of a common series of transactions and occurrences."  *Blount v. U.S. Sec. Assocs.*, 930 F. Supp. 2d 191, 193 (D.D.C. 2013); *see also Alexander v. Edgewood Mgmt. Corp.*, 321 F.R.D. 460, 463 (D.D.C. 2017) ("That there are some material differences between the allegations against each defendant 'does not automatically bring such claims outside the same transaction or occurrence language.'" (quoting *Montgomery*, 532 F. Supp. 2d 36)); *Martinez v. Dep't of Justice*, 324 F.R.D. 33, 36-37 (D.D.C. 2018) (finding "logical relationship" among FOIA requests to join numerous agencies even though the requests were not identical because the requests sought categories of records that were about the same underlying subject matter); *Montgomery*, 532 F. Supp. 2d at 35-36 (finding Rule 20(a)(2)'s prongs met even though plaintiffs, in an employment discrimination context, worked in separate offices, had different supervisors, and alleged different claims against defendant).

These allegations similarly satisfy Rule 20(a)(2)'s second prong, which requires only that "some common question of law or fact connect[] the claims against defendants."  *Martinez*, 324 F.R.D. at 36 (internal quotation marks omitted) (citing *Disparte v. Corp. Exec. Bd.*, 223 F.R.D. 7, 11 (D.D.C. 2004)).  In the employment discrimination context, courts evaluate "the circumstances surrounding the [] claims, including the people involved, the location, the time frame, and the defendant's pattern of behavior."  *Spaeth v. Mich. State Univ. Coll. of L.*, 845 F. Supp. 2d 48, 54 (D.D.C. 2012) (alteration in original) (quoting *Montgomery*, 532 F. Supp. 2d at 35).  Here, plaintiff's claims against Adamy, Paletta, and defendant arise from the conditions of her employment with the WSJ during the time period when Adamy and Paletta supervised her.

Essentially, all of the claims "are based on identical legal theories and the same core facts." *Blount*, 930 F. Supp. 2d at 194.  The events underlying them (1) occurred in the same location (the WSJ's D.C. Office); (2) involved common parties, *i.e.* Adamy, Paletta, the WSJ (as owned and operated by defendant); (3) occurred during the same time frame, from February 2024 to June 2024; and (4) as described above, Adamy, and Paletta, are alleged to have been the instrumentalities of the WSJ's discriminatory actions against plaintiff.  Furthermore, plaintiff is seeking to join Adamy to assert similar discrimination and common law fraud claims that she is already asserting against defendant to hold Adamy, defendant, and Paletta severally liable.  Pl.'s Mem. at 5.  Thus, "some common question of law or fact connects the claims against" Adamy, Paletta, and the defendant.  *Martinez*, 324 F.R.D. at 36 (internal quotation marks omitted) (citing *Disparte*, 223 F.R.D. at 11).  As such, the second prong is met.

### B. Equity Favors Joinder

Without disputing that plaintiff meets the conditions for joinder of a defendant under Rule 20(a)(2), defendant invokes the doctrine of fraudulent joinder in an effort to defeat plaintiff's motion to join Adamy.  Def.'s Opp'n at 7.  This doctrine "allows the Court to 'disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction.'" *Walter E. Campbell Co. v. Hartford Fin. Servs. Grp., Inc.*, 959 F. Supp. 2d 166, 170 (D.D.C. 2013) (quoting *Mayes*, 198 F.3d at 461).  To sustain a claim of fraudulent joinder, the "removing party bears the burden of proving that, either '(1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the . . . defendant into state court." *Id.* (quoting *In re Tobacco/Gov't Health Care Costs Litig.*, 100 F. Supp. 2d 31, 39 (D.D.C. 2000)).  Defendant invokes the former

12

line of argumentation and has a "heavy" "burden of proof to establish fraudulent joinder." *Id.* (quoting *In re Tobacco/Gov't Health Care Costs Litig.*, 100 F. Supp. 2d at 39).

Defendant has raised the fraudulent joinder doctrine, however, in the wrong posture. The fraudulent joinder doctrine applies where a party "is named as a defendant in the *original state court complaint* to avoid removal." *Cobb v. Delta Exports, Inc.*, 186 F.3d 675, 678 (5th Cir. 1999) (emphasis added). Generally, this doctrine "does not apply to joinders that occur *after* an action is removed." *Id.* at 677 (emphasis in original); *Schur*, 577 F.3d at 763 ("Fraudulent joinder, however, is arguably inapplicable to *post*-removal joinder." (emphasis in original)); *Mayes*, 198 F.3d at 461 ("[T]he fraudulent joinder doctrine justifies a federal court's initial assumption of diversity jurisdiction, [but] it has no effect once the district court actually possesses jurisdiction–including after the case has been removed.").

Nonetheless, courts faced with a defendant raising fraudulent joinder in the post-removal context, as here, have reasoned that "although the fraudulent joinder doctrine is not directly applicable to the post-removal context, it can be a relevant factor for determining whether to permit joinder under § 1447(e)," *Schur*, 577 F.3d at 763, with the statutory options of denying joinder or permitting joinder with remand of the action to state court, *see* 28 U.S.C. § 1447(e); 14C WRIGHT & MILLER § 3739.1. Fraudulent joinder "is not *dispositive* of whether joinder is improper; it is simply another tool in the district judge's belt for scrutinizing the plaintiff's motive for joining a nondiverse party." *Id.* (emphasis in original). As such, in addition to a plaintiff's satisfaction of the joinder conditions under Rule 20(a)(2), "courts look to a variety of factors," when evaluating whether to grant or deny joinder pursuant to 28 U.S.C. § 1447(e), including: (1) "the motivation for the joinder"; (2) "whether the plaintiff was dilatory in seeking joinder"; (3) "prejudice to the existing defendants if the joinder is permitted"; (4) "prejudice to

the plaintiff if the joinder is not permitted"; (5) "judicial efficiency and economy"; (6) "as well as other equitable concerns" in making its decision to permit joinder and remand the case to state court.  14C WRIGHT & MILLER § 3739.1.[3]

The parties do not meaningfully dispute factors two through five, which favor joinder and remand.  First, plaintiff promptly sought to join Adamy.  After filing her lawsuit in D.C. Superior Court on July 17, 2024, plaintiff moved to join Adamy less than a month later on August 14, 2024, albeit after defendant removed the action to federal court.  *See generally* Compl.; Prop. Amend. Compl.; Pl.'s Mot.  Second, defendant does not argue that the joinder of Adamy, who currently works for the WSJ, which defendant owns and publishes, would result in any prejudice to defendant.  *See* Def.'s Opp'n at 1; *id.*, Ex. 1, Decl. of Janet Adamy ("Adamy Decl.") ¶¶ 2-3, 5, ECF No. 8-1; Prop. Amend. Compl. ¶ 10.  Third, plaintiff submits that should her motion be denied, she will institute a separate lawsuit based on the same set of facts present here and allege similar claims in D.C. Superior Court against Adamy while her claims against the already-named defendant and to-be-joined defendant Paletta continue in this forum, a result that would clearly undermine "judicial economy" and the "just, speedy, and inexpensive determination of the action."  *Alexander*, 321 F.R.D. at 462 (quoting *Spaeth*, 845 F. Supp. 2d at 53); *see* FED. R. CIV. P. 1.  Finally, and relatedly, plaintiff argues this piecemeal approach will "significantly injure[]" her given the "fiscal burdens of duplicative litigation."  Pl.'s Mot. at 7.  All that remains, then, is whether plaintiff has an improper motivation for seeking joinder of Adamy.

---

[3]    While the D.C. Circuit has not directly addressed application of these factors, it has cited them approvingly, *see Burka*, 87 F.3d at 481 n.5, and circuit courts across the country have routinely adopted the factors when evaluating claims of post-removal joinder that will destroy subject matter jurisdiction. *See e.g.*, *Hensgens*, 833 F.2d at 1182; *Avenatti*, 41 F.4th at 131-33; *Hickerson*, 818 F. App'x at 885-86; *Bailey*, 563 F.3d at 307-09; *Schur*, 577 F.3d at 762; *Mayes*, 198 F.3d at 461-63; *accord Casas Off. Machines, Inc.*, 42 F.3d at 675 n.8.

Defendant's improper motivation argument rests solely on the contention that "[p]laintiff's effort to join Ms. Adamy amounts to fraudulent joinder." Def.'s Opp'n at 1. A defendant "claiming fraudulent joinder bears a heavy burden, and courts are required to resolve disputed issue of fact and law in favor of plaintiff." *Simon v. Hofgard*, 172 F. Supp. 3d 308, 315 (D.D.C. 2016) (quoting *NASA Fed. Credit Union v. W. Jenkins Plumbing & Heating Co.*, 607 F. Supp. 2d 213, 215 (D.D.C. 2009)). A plaintiff, in defending against a claim of fraudulent joinder, can "establish[] a cause of action or right to relief against a defendant so long as the plaintiff's claim is not 'wholly nonsensical.'" *Id.* (quoting *Boyd v. Kilpatrick Townsend & Stockton, LLP*, 79 F. Supp. 3d 153, 157-58 (D.D.C. 2015)). This standard is more permissive than when evaluating plaintiff's allegations under a motion for summary judgment or motion to dismiss. *See Arenivar v. Manganaro Midatlantic, LLC*, 317 F. Supp. 3d 362, (D.D.C. 2018) ("Because the fraudulent joinder analysis 'is not as penetrating' as those for a motion for summary judgment or to dismiss, the Court reaches no determination about whether [plaintiff's] allegations would be sufficient to withstand those challenges." (internal quotation marks omitted) (citation omitted)); *Page v. Whole Foods Mkt. Servs.*, No. 21-cv-1744 (CJN), 2021 WL 5109703, at *4 n.3 (D.D.C. Nov. 3, 2021) (noting that the fraudulent joinder standard is not akin to the plausibility standard governing reviews of motions to dismiss but instead "resembles the 'wholly insubstantial and frivolous' standard for dismissing claims under Rule 12(b)(1) for lack of federal question jurisdiction" (citation omitted)); *see also Grancare, LLC v. Thrower*, 889 F.3d 543, 549 (9th Cir. 2018) ("A standard that equates fraudulent joinder with Rule 12(b)(6) conflates a jurisdictional inquiry with an adjudication on the merits.").

As discussed above, plaintiff's Proposed Amended Complaint alleges claims under the DCHRA, breach of contract, and civil fraud. *See* Prop. Amend. Compl. ¶¶ 91-102. [4]  Defendant argues that the allegations with respect to the DCHRA are untimely as a "plaintiff must file a private cause of action under the DCHRA within one year of the alleged unlawful discriminatory act," Def.'s Opp'n at 8; *see* D.C. Code § 2-1403.16(a), and "Ms. Adamy has not supervised Plaintiff for over a decade and her interaction with Plaintiff over the last several years has been limited," Def.'s Opp'n at 8.  To bolster its claims, defendant submitted an affidavit from Adamy attesting to her limited interaction and supervision of plaintiff.  Adamy Decl. ¶¶ 2-3, 5.  Moreover, in addition to the issue of timeliness of any claim under the DCHRA, defendant argues that plaintiff cannot "state a claim" on any of her disability claims against Adamy.  Def.'s Opp'n at 9-13.  Finally, defendant argues that plaintiff cannot state a claim for civil fraud because plaintiff "has not alleged that Ms. Adamy ever made a false representation of material fact about Plaintiff's performance," and "Ms. Adamy was not involved in the issuance of the [performance warning], had nothing to do with her supervision in 2023 and 2024, and had only minimal interaction with Plaintiff during the relevant time period."  Def.'s Opp'n at 12-13; Adamy Decl. ¶¶ 2-3, 5.

In response, plaintiff correctly emphasizes that the applicable standard at this juncture is not whether she has sufficiently alleged that she could, in effect, state a claim against Adamy, Pl.'s Reply at 1-2 (citing *Walter E. Campbell Co.*, 48 F. Supp. 3d at 56-57 and *Simon*, 172 F. Supp. 3d at 315-16), but whether the claims are "wholly nonsensical," *Simon*, 172 F. Supp. 3d at 315 (quoting *Boyd*, 79 F. Supp. 3d at 157-58).  Second, as described above, plaintiff's Proposed Amended Complaint contains facts regarding Adamy's involvement in the alleged disability

---

[4]    Plaintiff's breach of contract claim is brought only against the WSJ.  *See* Pl.'s Mem. at 6; Prop. Amend. Compl. ¶¶ 97-100.

discrimination within one year of her alleged constructive termination. *See* Prop. Amend. Compl. ¶¶ 10, 47, 61, 72-77, 80-81. Third, in addition to the allegations detailed in the Proposed Amended Complaint, *see id.* ¶¶ 10, 47, 61, 72-77, 80-81, plaintiff submitted an affidavit describing Adamy's direct involvement in reviewing her performance and exerting supervisory authority over her all while allegedly creating a false narrative about her job performance as a pretense for firing her due to her disability accommodation, *see* Pl.'s Reply Supp. Pl.'s Mot. ("Pl.'s Reply"), Ex. 1, Decl. of Stephanie Armour ("Armour Decl.") ¶¶ 19-25, 31-33, ECF No. 9-1. Finally, plaintiff argues that Adamy made "false representations of material fact" regarding her performance, giving rise to claims of common law fraud. Pl.'s Reply at 6-8; *see* Prop. Amend. Compl. ¶¶ 61, 72-77, 80-81; Armour Decl. ¶¶ 19-25.

Defendant's comingling of arguments regarding the merits and joinder, coupled with competing declarations of plaintiff and Adamy, have made the factual record murky. Yet, many of "defendants' . . . arguments 'turn on questions . . . that bear too closely on a merits determination, which is not appropriate as part of the fraudulent joinder analysis.'" *Colon v. Ashby*, 314 F. Supp. 3d 116, 124-25 (D.D.C. 2018) (quoting *Simon*, 172 F. Supp. 3d at 320). Even with the parties' competing factual points and counterpoints, this Court must assume all facts and law in favor of plaintiff, and set against this standard, defendant's urging that "there is *no possibility* that plaintiff can establish" at least one cause of action or right to relief against Adamy is a stretch too far. *Colon*, 314 F. Supp. at 123 (emphasis in original) (quoting *Simon*, 172 F. Supp. 3d at 315); *see also NASA Fed. Credit Union*, 607 F. Supp. 2d at 215 (holding that defendant's argument that plaintiff's injury "ha[d] never been recognized as supporting a cause of action" could not support a finding of fraudulent joinder because defendant "provide[d] no authority to support the proposition that [the injury] *cannot* be the basis for damages in this

action" (emphasis in original)). "If there is *even a possibility* that a state court would find a cause of action stated against any one of the named in-state defendants on the facts alleged by the plaintiff, then the federal court must find that the in-state defendant(s) have been properly joined, and that there is incomplete diversity, and that the case must be remanded to the state courts." *Brown v. Brown & Williamson Tobacco Corp.*, 26 F. Supp. 2d 74, 77 (D.D.C. 1998) (emphasis added) (citation and internal alteration omitted).

In any event, assuming defendant had demonstrated that joinder of Adamy would amount to fraudulent joinder, that would not be "*dispositive*" in the current posture where the standard of Rule 20(a)(2) has been met. *Schur*, 577 F.3d at 763 (emphasis in original). Further analysis of equitable considerations would be required and counsel towards granting joinder and remanding the action to D.C. Superior Court because, at bottom, defendant contends that plaintiff "seeks to join [Adamy] as an individual co-defendant in this matter, after [defendant] already properly removed, solely so that the case might be remanded back to D.C. Superior Court." Def.'s Opp'n at 1. Other than the timing of plaintiff's motion, defendant provides no support for this being the "sole[]" reason for the addition of two defendants to this action. Plaintiff, for her part, has submitted that the delay in joining the new defendants was the result of "investigations and legal research since the earlier filings" that "led to the conclusion that Adamy's involvement . . . was more extensive than originally known." Pl.'s Reply at 5. Whether Adamy's involvement will permit a finding that plaintiff's claim can survive dispositive motions practice will be left to the D.C. Superior Court. *See Simon*, 172 F. Supp. 3d at 316 ("The heavy burden for establishing fraudulent joinder promotes comity towards the jurisdiction of state courts by preventing federal courts from trespassing on their jurisdictional turf." (citing *Downey v. Ambassador Dev., LLC*, 568 F. Supp. 2d 28, 30 (D.D.C. 2008))).

### C.  Remand

Neither party argues that remand would be inappropriate if Adamy is joined as a defendant in the instant action.  Adamy's joinder is proper and will be granted. This new defendant's presence in this action will destroy diversity, thereby depriving this Court of subject matter jurisdiction over the case.  Remand to the state court is thus necessary.  *See* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."); *see also Arenivar*, 317 F. Supp. 3d at 367 ("When it appears that a district court lacks subject matter jurisdiction over a case that has been removed from a state court, the district court must remand the case."  (quoting *Republic of Venez. v. Philip Morris Inc.*, 287 F.3d 192, 196 (D.C. Cir. 2002))); *Walker v. 2100 2nd St SW, LLC*, No. 24-cv-677 (RC), 2024 WL 3887395, at *2 (D.D.C. Aug. 20, 2024) ("The Superior Court for the District of Columbia is considered a state court for [diversity and removal] purpose[s]." (citing 28 U.S.C. § 1451(1))); 28 U.S.C. § 1332 (setting forth the requirements for complete diversity).

## IV.    CONCLUSION

For the foregoing reasons, plaintiff's motion to join Damian Paletta and Janet Adamy as defendants in this case, as set out in the Proposed Amended Complaint, is granted, and this case is remanded to D.C. Superior Court.

An order consistent with this opinion will be filed contemporaneously.


Date: November 7, 2024


_____
**BERYL A. HOWELL**
United States District Judge